FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ NOV 2 5 2014 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANDERSON SCRUBB,

                Petitioner,

- against -

THOMAS LAVALLEY,

                Respondent.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
10-CV-03286 (CBA) (JO)

AMON, Chief United States District Judge.

Petitioner Anderson Scrubb, proceeding pro se, filed a petition for a writ of habeas corpus on July 11, 2010. (DE # 1.) The Court referred the petition to Magistrate Judge James Orenstein who issued a Report and Recommendation ("R&R") on August 1, 2013. (DE # 9.) Scrubb failed to file timely objections to the R&R, and on September 30, 2013, the Court adopted Magistrate Judge Orenstein's R&R without objection. (DE # 12.)

On October 11, 2013, Scrubb filed a notice of appeal (DE # 16) and, on October 31, 2013, Scrubb filed a motion pursuant to Rule 60(b)(3)(6) of the Federal Rules of Civil Procedure seeking to vacate the judgment dismissing his petition, claiming that he did not receive a copy of the R&R. (DE # 17.) Although the government offered proof that the R&R was mailed to him (DE # 15), in an order dated November 11, 2013, the Court informed the Second Circuit that it was inclined to grant Scrubb's motion and vacate the judgment in order to provide him an opportunity to object to the R&R. (DE # 18.) On March 31, 2014, the Second Circuit remanded the case back to the Court for further proceedings. (DE # 19.) Scrubb filed his objections to the R&R on May 1, 2014 ("Pet. Obj."). (DE # 26.)

The Court grants Scrubb's motion to reconsider and, after reviewing his objections to the R&R and considering the issues de novo, again adopts the R&R as the decision of the Court.

1

## BACKGROUND

### I. Factual History

The Court briefly recites the factual background of Scrubb's state court conviction, but assumes general familiarity with the underlying criminal case.

In 2006, Jocelyn Ford ("Ford"), a Trinidadian citizen, overstayed her visa so that she could assist with her daughter's pregnancy. (See Trial Tr. at 236-37, DE #3 Ex. A, Parts 5-11.) A friend introduced Ford to Scrubb, a U.S. citizen, who agreed to marry her in exchange for $3,000. (Id. at 240-41.) Ford paid Scrubb in installments and the two were married in the spring of 2006. (Id. at 241-43.) After the marriage, however, Scrubb refused to sign Ford's immigration paperwork unless he received an additional $2,000 or $3,000. (Id. at 243-44.)

On August 12, 2006, Scrubb met with Ford's sister, Gloria Boney ("Boney"), and again demanded more money. (Id. at 290-91.) Boney and Scrubb argued and, when Boney threated to call the police, Scrubb strangled her with an extension cord and repeatedly stabbed her in the head with a screwdriver. (Id. at 291-92.)

In the early morning hours of August 13, 2006, NYPD Detectives John Anselmo ("Anselmo") and Vera Whitehall ("Whitehall") were assigned to investigate Boney's murder. (Id. at 187-89.) Ford told the detectives that Scrubb had planned to meet with her sister, Boney, earlier that evening and volunteered to take the detectives to Scrubb's apartment. (Id. at 189-90.) When they arrived at the apartment at around 4 a.m., the detectives found Scrubb standing on the stoop outside his building. (Id. at 191-92.) Anselmo asked Scrubb if he would come to 71st precinct to answer questions and Scrubb agreed, stating that would be "no problem at all." (Id. at 192, 195-96.) Since Ford was already waiting in Anselmo's patrol car, Anselmo told Scrubb that

another detective would drive him to the precinct. (Id. at 192, 195-96.) Anselmo then called the nearby 67th precinct and requested assistance transporting Scrubb. (Id. at 192.)

Detective Kevin Gasser ("Gasser") and his partner received Anselmo's request and arrived at the scene shortly thereafter, while Anselmo was still talking with Scrubb. (Id. at 198-99.) Gasser then drove Scrubb to the 71st precinct. (Id. at 199-200.) During the trip to the precinct, Scrubb sat with Gasser's partner in the back of the patrol car. (Id. at 199-200.) Scrubb was not handcuffed at any point during the trip. (Id. at 200.) When they arrived at the precinct, Gasser placed Scrubb in an unlocked interview room and closed the door. (Id.)

Several hours later, Detective Winfred Justice ("Justice"), the lead detective investigating the murder, entered the interview room. (Id. at 270-71.) Prior to questioning Scrubb, Justice provided a Miranda warning and Scrubb signed a written waiver form. (Id. at 271-75.) Scrubb told Justice that on the night of the murder he saw several friends, but made no mention of seeing Boney. (Id. at 275-277.) After receiving Scrubb's consent, a detective searched his apartment and retrieved a shirt that matched a button found at the crime scene. (Id. at 277-79, 285-86.) Other detectives interviewed Scrubb's friend, Victoria Howard, who stated that Scrubb came to her apartment on the night of the murder and gave her three credit cards that belonged to the victim. (Id. at 283-84, 286.)

When police confronted Scrubb with the shirt and the credit cards, he admitted to killing Boney and signed a written confession. (Id. at 287-94.) Scrubb repeated that confession in a later videotaped statement to an assistant district attorney. (Id. at 294-95.)

## II. State Conviction and Appeal

Scrubb was charged with second-degree murder, three counts of fourth-degree grand larceny, and two counts of fourth-degree criminal possession of a weapon. (Pet. App. Br., at 2,

3

DE # 3, Ex. C.) Before going to trial, Scrubb moved to suppress various incriminating statements and physical evidence on the ground that it derived from an illegal arrest.

The trial court held a suppression hearing on December 3, 2007. At that hearing, the prosecution sought to prove that Scrubb had consented to go to the police precinct. However, the prosecution did not call Detective Anselmo, who secured Scrubb's consent, but instead called Detective Gasser, who transported Scrubb from his apartment to the precinct. (Suppression Hrg. Tr. at 4-13, DE # 3 Ex. A, Part 1.) Gasser testified that when he arrived he observed Scrubb talking to Anselmo and another officer. (Id.) In addition, he noted that Scrubb was not handcuffed, either in the patrol car or at the precinct, and that upon their arrival at the precinct he placed Scrubb in an unlocked interview room. (Id.) Moreover, the lead detective on the case, Detective Justice, testified he was told by Anselmo that Scrubb had voluntarily agreed to answer questions at the precinct. (Id. at 14-15, 20-21.) Based on Gasser's and Justice's testimony, the trial court concluded Scrubb was not in custody when he was taken to the precinct and, therefore, denied his motion to supress. (Memorandum, People v. Scrubb, No. 6648/06 (N.Y. Sup. Ct. Dec. 11, 2007), DE #3 Ex. B.)

Scrubb proceeded to trial and was found guilty of second-degree murder and grand larceny. (Trial Tr. at 669-70.) Scrubb, represented by counsel, appealed his conviction claiming that the trial court erred in denying his suppression motion because he was unlawfully seized when he consented to the search of his apartment and made incriminating statements. (Pet. App. Br. at 28.) Specifically, Scrubb relied on a state court case holding that a finding of consent is precluded where a prosecutor failed to call the officer who obtained the consent and instead relied exclusively on the hearsay testimony of other officers. (Id.) The appellate court rejected Scrubb's argument, People v. Scrubb, 894 N.Y.S.2d 772 (App. Div. 2010), and the Court of

4

Appeals denied his request for leave on May 20, 2010, People v. Scrubb, 903 N.Y.S.2d 781 (2010). Scrubb timely filed the instant petition on July 11, 2010. (DE # 1.)

### III. Habeas Petition & the R&R

Scrubb's petition asserted three bases for relief. First, he contended that his right to be free from unreasonable seizures under the Fourth Amendment was violated when he was taken into custody without probable cause. (Pet. ¶ 12, Ground Two.) Second, he argued that the allegedly unlawful seizure violated his Fourteenth Amendment right to due process. (Id. ¶ 12, Ground Three.) Third, he asserted that the prosecution's failure to call Anselmo, the detective to whom Scrubb gave his consent to be transported to the police precinct, deprived him of his Sixth Amendment right to confront his accuser. (Id. ¶ 12, Ground One.)

Magistrate Judge Orenstein's R&R addressed threshold procedural issues, before resolving each of Scrubb's three claims on the merits. The R&R determined that while Scrubb's Fourth Amendment claim was properly raised and exhausted in state court, Scrubb failed to preserve his Due Process and Confrontation claims on appeal. (R&R at 5-6.) Nevertheless, the R&R found that those two claims satisfied the exhaustion requirement because they would be procedurally barred under New York law. (Id. at 6-8.)

Although the procedural bar provided a sufficient basis to deny those claims, the R&R proceeded to reject all three claims on the merits. (Id. at 9-12.) Magistrate Judge Orenstein correctly concluded that Scrubb's Fourth Amendment claim fell outside the scope of a federal habeas corpus proceeding. (Id. at 9-10).[1] Since Scrubb's Due Process claim amounted to nothing more than an attempt to end-run the habeas bar on Fourth Amendment challenges, the

---

[1] Scrubb does not object to the R&R's merits determination of his Fourth Amendment claim. Since the R&R properly denied relief on that claim (R&R at 9-10), the Court adopts that finding as its opinion and denies the Fourth Amendment claim on the merits.

5

R&R likewise rejected it. Finally, the Sixth Amendment claim was dismissed because the Confrontation Clause does not extend to pre-trial hearings and, in any event cross-examination at trial satisfied the Sixth Amendment requirements. (Id. at 12-13 & n.6.)

## IV. Scrubb's Objections to the R&R

Scrubb raises four objections to the R&R. (DE # 26.)[2] First, he claims that, in finding that his second and third habeas claims were not properly presented in state court, the R&R failed to construe his petition liberally. (Pet. Obj. ¶¶ 12-15.) Second, he contends that the R&R erred in concluding that the Sixth Amendment does not afford him the right to confront his accuser at the suppression hearing. (Id. ¶ 16.) Third, Scrubb objects to the R&R's failure to excuse his procedural defaults on the Due Process and Confrontation Clause claims under Murray v. Carrier, 477 U.S. 478, 492 (1986). (Pet. Obj. ¶ 17.) Finally, Scrubb "objects to the entire Recommendation" on the grounds that it fails to "state key facts of law" and provides "no basis in the evidence for [its] proposed findings." (Id. ¶ 18.) The Court considers each objection in turn.

## DISCUSSION

When deciding whether to adopt a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). To accept those portions of the R&R to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." Jarvis v. N. Am. Globex Fund, L.P., 823 F. Supp. 2d 161, 163

---

[2] To the extent Scrubb argues that Magistrate Judge Orenstein erred by failing to grant an evidentiary hearing (Pet. Obj. ¶ 4), that claim is entirely meritless. The extensive factual record belies Scrubb's argument that he did not have a full and fair opportunity to litigate his claim in state court. Since the petition fails to shoulder the heavy burden necessary to justify an evidentiary hearing, see 28 U.S.C. § 2254(e)(2), the Court rejects that objection.

(E.D.N.Y. 2011) (internal quotation marks and citation omitted). When specific objections are made, however, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). However, "to the extent that a party makes only conclusory or general objections, or simply reiterates the original arguments, the court reviews the Report and Recommendation only for clear error." Soley v. Wasserman, 823 F. Supp. 2d 221, 228 (S.D.N.Y. 2011) (internal quotation marks and alterations omitted).

## I. Failure to Liberally Construe the Habeas Petition

Scrubb's first objection, that the R&R did not liberally construe his petition, is based on a misunderstanding of the requirement that the Court read pro se petitions liberally. (Pet. ¶¶ 13-15.) The R&R properly noted that the Court must broadly construe Scrubb's habeas petition "'to raise the strongest arguments that [it] suggest[s].'" (R&R at 5 (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).) The R&R further correctly stated that the Court must take into account arguments made on direct appeal, to the extent those arguments are referenced in Scrubb's pro se petition, and deem those arguments properly raised in this proceeding. Id.

Scrubb's objection, however, rests on the erroneous belief that the Court must broadly construe both his pro se petition and the briefs submitted during his direct appeal. It is well-established that the liberal construction rule is designed to protect pro se litigants from forfeiting their rights due to their lack of legal education and training. See Triestman, 470 F.3d at 474. It is inapplicable to motions submitted by counsel. See id.

Scrubb's contention that Magistrate Judge Orenstein applied the incorrect standard of review is simply wrong. Since the record clearly establishes that Scrubb was represented by

counsel during his direct appeal, the Court is not required to liberally construe his appellate briefs. (Pet. App. Br. at 1); see Triestman, 470 F.3d at 474. The direct appeal failed to raise either the Due Process or the Confrontation Clause claims Scrubb now asserts. (See Pet. App. Br.) Thus, the R&R correctly concluded Scrubb procedurally defaulted on those claims. (See R&R at 6-7.)

Moreover, the R&R proceeded to analyze those claims as if Scrubb had, in fact, properly raised them on appeal, but still concluded they were meritless. (Id. at 11-13.) As Scrubb does not object to the R&R's conclusion that his Due Process claim fails on the merits, that determination is reviewed for clear error. (See Pet. Obj.); Jarvis, 823 F. Supp. 2d at 163. Finding none, the Court adopts the R&R's finding denying Scrubb's Due Process claim on the merits.

Although Scrubb does raise an objection to the R&R's denial of his Confrontation Clause claim on the merits, (Pet. Obj. ¶ 16), that argument fails for the reasons described below.

## II. Confrontation Clause Challenge

Scrubb claims that the R&R erred in finding that the Sixth Amendment does not provide him with a right to confront Anselmo at the suppression hearing. (Pet. Obj. ¶ 16.) Relying on the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), Scrubb argues that the prosecutor's failure to call Anselmo deprived him of his right to confront the detective through cross-examination. (Id.)

Scrubb's reliance on Crawford is misplaced. The R&R properly found that the Sixth Amendment's right to confrontation does not extend to pre-trial hearings. (R&R at 12 (citing Pennsylvania v. Ritchie, 480 U.S. 39, 52 (1987)); see also Erbert v. Gaetz, 610 F.3d 404, 414 (7th Cir. 2010) (holding that the Confrontation Clause was not implicated when a statement was

8

considered at a suppression hearing); Francischelli v. Potter, No. 03-CV-6091 (ENV), 2007 WL 776760, at *10 (E.D.N.Y. Mar. 12, 2007) (noting that the court could find no authority applying Crawford to a suppression hearing). Therefore, Scrubb's Confrontation Clause claim must fail.

Moreover, even if the Confrontation Clause applied to pre-trial hearings, the "opportunity for full and effective cross-examination[]" at trial satisfies the Clause's requirements. Jones v. Woods, No. 07-CV-1326 (CBA), 2009 WL 4906882 at *3 (E.D.N.Y. Dec. 18, 2009) (hearsay testimony introduced in pre-trial hearing does not violate the Confrontation Clause where a defendant has a full opportunity to cross-examine the source of that testimony at trial) (internal quotation marks omitted). Here, Anselmo testified at trial and Scrubb had the opportunity to cross-examine him. (Trial Tr. at 194.) That alone is a sufficient basis on which to deny Scrubb's Sixth Amendment claim. See Jones, 2009 WL 4906882, at *3.

### III. Procedural Default

Scrubb next argues that the R&R "applied the wrong formulation of the 'miscarriage of justice' standard, as articulated in Murray v. Carrier, 477 U.S. 478 (1986)." (Pet. Obj. ¶ 17.) Although the R&R never mentions that standard, the Court construes the objection as arguing that the R&R misapplied Murray when it failed to excuse Scrubb's procedural default.

It is well-established that procedural default bars habeas relief unless the petitioner can show cause for the default and actual prejudice resulting from it. Murray, 477 U.S. at 495-96. However, the Court can bypass those general requirements in extraordinary cases where the claimed constitutional violation resulted in the conviction of one who is actually innocent. Id. To establish an actual innocence claim, the petitioner bears the demanding burden of showing that "no reasonable jury would have found [him] guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 537 (2006).

9

Scrubb falls well short of making that extraordinary showing. Although Scrubb claims his conviction rests on evidence that should have been excluded, he does not contest that the evidence in question is, in fact, incriminating and that he is actually guilty. (Cf. Pet. Obj. ¶ 4 ("[T]he facts of this case ha[ve] been fairly stated in the Magistrate[] [Judge's] Report and Recommendation.")) Indeed, the Supreme Court has recognized that "[a] claim of illegal search and seizure under the Fourth Amendment is crucially different from many other constitutional rights; ordinarily the evidence seized can in no way have been rendered untrustworthy by the means of its seizure and indeed often this evidence alone establishes beyond virtually any shadow of a doubt that the defendant is guilty." Stone v. Powell, 428 U.S. 465, 490 (1976) (quoting Kaufman v. United States, 394 U.S. 217, 237 (1969) (Black, J., dissenting)). Since Scrubb cannot establish actual innocence, the safety valve provided in Murray to prevent fundamental miscarriages of justice simply does not apply.

Therefore, the R&R correctly found that he must show cause and prejudice to excuse his procedural defaults. (R&R at 7 n.3.) As Scrubb provided neither, the R&R correctly determined that Scrubb forfeited those claims. (Id.)

Moreover, despite the procedural default, the R&R went on to deny Scrubb's Due Process and Confrontation Clause claims on the merits. (Id. at 11-13.) The Court agrees with that analysis and would therefore deny Scrubb's petition even if it excused his defaults.

## IV. General Objection

Finally, Scrubb generally objects to the R&R's findings on the basis that it "fail[ed] to state key facts of law" and is unsupported by the evidence. (Pet. Obj. ¶ 18.) Such a vague assertion does not constitute a proper objection. Soley, 823 F. Supp. 2d at 228. As such, it can be disregarded by the Court. See id.

Nevertheless, this Court has reviewed the entire R&R <u>de novo</u> and agrees with the Magistrate Judge Orenstein's well-reasoned recommendation.

## CONCLUSION

Having reconsidered the R&R <u>de novo</u> in light of Scrubb's objections, the Court again adopts the R&R and denies habeas relief. Since Scrubb has failed to make a "substantial showing of the denial of a constitutional right," a Certificate of Appealability shall not issue. 28 U.S.C. § 2253(c). The Clerk of the Court is directed to enter judgment and to close the case.

SO ORDERED.

Dated: November 24, 2014
Brooklyn, New York

s/Carol Bagley Amon

Carol Bagley Amon
Chief United States District Judge